ST. LOUIS SOUTHWESTERN RAILWAY COMPANY v. J. O. SMITH.

Decided November 8, 1902.

1.—Negligence—Question for Jury—Verdict Sustained.

Evidence considered in an action for personal injury and held to sustain a verdict finding, in effect, that the negligence of a railroad foreman caused the injury, although the verdict was based on the testimony of the defendant alone, which was contradicted by that of several other witnesses.

2.—Ordinary Care—Definition—Charge.

A charge defining ordinary care as that degree of care which a person of ordinary prudence and caution is accustomed to exercise under the same or like circumstances, is not erroneous because the word "accustomed" is used instead of the expression, "would ordinarily use."

3.—Master and Servant—Vice-Principal—Concurring Negligence of Foreman and Fellow Servant—Pleading.

Although plaintiff alleged that his injury was due solely to the negligence of defendant's foreman, the court could properly charge that if the foreman's negligence alone, or in combination with that of plaintiff's fellow servants, caused the injury, plaintiff could recover, since it was no defense that negligence on the part of the fellow servants concurred with that of the foreman in causing the injury.

Appeal from the District Court of Cherokee County. Tried below before Hon. Tom C. Davis.

*E. B. Perkins* and *Marsh, McIlwaine & Fitzgerald,* for appellant.

*W. T. Norman, R. L. Robinson, W. M. Imboden,* and *Willson & Watkins,* for appellee.

GILL, ASSOCIATE JUSTICE.—This was an action for damages for personal injury, brought by appellee, J. O. Smith, against the appellant railway company, and a trial' by jury resulted in a verdict and judgment in favor of appellee for $4500, from which the railway company has appealed.

The circumstances attending the accident are as follows: On the 7th day of February, 1900, appellee was working for appellant in its bridge and building department. J. W. Brahaney was his foreman, and appellee and several others were working under him, and were engaged in raising a shear leg, or derrick, at the new shops at Tyler. The shear legs consisted of two upright posts 6x6 inches, 30 feet long, fastened together at the top by a headblock, and at the bottom by a crosspiece 2x6 or 2x8 inches, extending out on each side to prevent the shear leg from falling to the right or the left. These two posts were crossbraced every 10 feet; that is, they had three sets of cross braces. To use a familiar illustration, the shear leg was similar to the common ladder used by carpenters, except, instead of having slats nailed across for steps, it had three sets of cross braces. At the top it had blocks nailed across the ends of the posts to hold them together, and at the bottom it had a piece 2x6 or 2x8 inches nailed across. The shear leg was intended to be used in lifting or raising very heavy timbers in the erection of the new shops at Tyler. When in use for the above purpose, it is in almost, but not quite, an upright position, and is kept from falling backward or forward by means of a guy line in front and one behind. The shear leg was lying on the ground that morning, and in order to get it up in working position it was first raised by hand, and then raised by block and fall from behind. While it was being raised by block and fall, appellee was in charge of and holding the guy line in front. It had rained some, and the ground was muddy and wet, and appellee called to the foreman to send him a man to drive a stake, so he could brace his foot as the shear leg was being raised. The stake was driven as requested by appellee. He saw it driven, and used it to brace his foot. After the shear leg was raised to the desired position appellee tied the front guy line to his stake. Later, and before the shear leg had been used for raising timber, appellee went to the top of it, or near the top, to change the block and fall, or to adjust the block and fall. While he was at or near the top engaged in his work with the block and fall, the stake he had tied his guy line to pulled up, and let the shear leg fall.

Appellee went upon the shear leg at the command of Brahaney, his superior.

The sole ground upon which appellee based his right to recover was the alleged negligent act of Brahaney in pulling too hard upon a rope, thereby causing the shear leg to fall. Appellee was the only witness who testified in his behalf on this issue, and he was opposed by several witnesses adduced by defendant. Upon the issue as to whether Brahaney pulled upon the rope, and was negligent in so doing, and whether his negligence in this respect, added to the tension caused by those already holding or pulling in that direction, caused the accident, we regard the verdict of the jury as conclusive. The evidence is not such as to authorize this court to interfere on the ground that the verdict is so manifestly against the weight and preponderance of the evidence as to indicate that the jury were influenced by some improper motive. It is largely a question of credibility of witnesses. We therefore find that Brahaney pulled upon the rope, was negligent in so doing, and his act in this respect was responsible for the accident. We also find that appellee was not guilty of contributory negligence, and it follows that he did not assume the risk of Brahaney's negligent act. In going upon the shear leg, which had not then been permanently fixed in position for the heavy work it was designed to do, he occupied the position of greatest danger. It was the duty of his fellow servants to exercise at least ordinary care for his safety. It was clearly the duty of Brahaney to exercise this care, and as the representative of the master his failure in this respect established liability against the company.

This is the second appeal of this case on the part of appellant, the case having been reversed on the former appeal on errors in the charge (63 Southwestern Reporter, 1064), and the only difference in the evidence on this appeal and the former lies in the fact that on this appeal Brahaney, though present, was not called to testify, whereas on the former appeal he denied that he pulled upon the rope; and that on this appeal the evidence is conflicting as to whether appellee called Brahaney to send some one to drive a stake against which to rest his foot, or directed a nearby fellow workman to drive it, whereas on the former appeal the evidence was undisputed that the request was addressed to Brahaney.

What has been said already disposes of the first assignment of error questioning the sufficiency of the evidence to support the verdict on the issue of liability. We do not deem it necessary to enter into a detailed discussion of the facts and circumstances upon which the verdict is based.

The charge of the court contained, among other things, the following definition of ordinary care: "Ordinary care, prudence, and caution, as used in this charge, means that degree of care which a person of ordinary prudence and caution is accustomed to exercise under the same or like circumstances." This portion of the charge is assailed because the word "accustomed" is used instead of the expression "would ordinarily use." The assignment ought not to be sustained. One of the primary

meanings of the word "accustomed" is "usual." The cases cited under appellant's proposition addressed to this question do not hold otherwise.

The court charged the jury, in effect, that if it should appear that Brahaney negligently pulled the rope and that act alone, or combining with the acts of fellow servants of appellee, caused the accident, appellee could recover. This is assailed because appellee alleged no other cause for the accident than the act of Brahaney, and it is contended that it was error for the court to submit the issue of concurring causes in the absence of allegations to that effect. That this contention is unsound it seems to us is plain and needs no citation of authority against the proposition.

If a plaintiff should allege that the negligence of his vice-principal injured him, it would be no defense for the master to say, "This is not true. The negligence of the vice-principal, combined with that of fellow servants, caused the accident." The court in this case charged, in effect, that the negligence of Brahaney, if shown, would authorize a recovery, and that the liability of the company would not be affected by the fact that the fellow servants of appellee were at fault also. The case of Johnson v. Railway, 66 Southwestern Reporter, 906, does not announce a different rule, and, properly interpreted, supports the conclusion we have announced. The same may be said of the other authorities cited on the proposition by appellant.

The trial court refused to give the requested special charge set out in the sixth assignment. This charge was an instruction that the railway company was not an insurer of the safety of its employes, and that if the company had furnished safe appliances, or if appellee knew of the unsafe condition of the appliances and the accident was caused by such unsafe condition, he could not in any event recover. The requested charge was properly refused. In the first place, the general charge fully protected appellant on the question of insuring the safety of its employes. The remainder of the requested charge calls especial attention to certain portions of the testimony, was upon the weight of the evidence, and was properly refused. The same may be said of the requested charge set out in the seventh assignment.

By the eighth assignment appellant complains of the refusal of the trial court to give the following requested charge: "Gentlemen of the jury, you are charged at the request of defendant, that in the event you believe from the evidence that Brahaney pulled on the ropes, as alleged by plaintiff, and caused the shear leg to fall, then you will consider whether or not said act of Brahaney, if you find he so acted, was a negligent one. And in considering this question, you will look to all the facts and circumstances surrounding Brahaney at the time, together with the knowledge Brahaney had, if any, as shown by the evidence, as to the manner in which plaintiff had secured the front guy line. And even though you may believe that Brahaney pulled on the lines and thus caused the shear leg to fall, still, if an ordinarily prudent person situated as was Brahaney, would have acted as Brahaney did, then in

no event can plaintiff recover, and this though Brahaney did in fact pull on the ropes."

This charge presents the true theory upon which the case should have been tried, but should not have been given because the case was submitted upon that theory, and the matters involved in the special charge were fully covered in the main charge. It should be borne in mind that the appellee did not complain of the appliances furnished by the company, and sought to recover alone upon the ground of Brahaney's negligence in pulling the rope. The appellee of course assumed the risk of the insecurely driven stake, and if that caused the accident he could in no event recover. This defense was presented to the jury in the main charge.

Assumed risk is an element in the case only in a general way, because if the accident was due to any other cause than Brahaney's alleged negligence, appellee would have no case. The true significance of the insecurely driven stake bears upon the question of Brahaney's negligence, and was covered by the charge which distinctly instructed the jury that if the accident was due to any other cause than his negligence, appellee could not recover. The relation of the stake to the case is fully discussed in the opinion on the former appeal. In that appeal we expressed the view that a charge should have been given on assumed risk, and appellant now complains that the court did not give such a charge. The trial court seems to have fully comprehended our meaning, and has correctly submitted this phase of the case. The defense of assumed risk is not in the case except in a general way, and in this way the question was submitted. If Brahancy was not negligent there could be no liability. His negligence depends upon how he acted with reference to the stake. The jury have held that he ought to have been more prudent, and we are not inclined to disturb their verdict upon this issue.

The other assignments do not require extended notice. We think the case was clearly presented and fairly tried, and that the amount of the verdict is not out of proportion to the injuries shown to have been suffered. The judgment is affirmed.

*Affirmed.*

Writ of error refused.